IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH THOR PERKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-20-476-D |
| GRADY COUNTY CRIMINAL JUSTICE AUTHORITY, et al., | ) ) ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff, a federal inmate appearing *pro se*, has filed this action alleging violation of his Eighth Amendment right to be protected from violence at the hands of other inmates. Plaintiff purports to bring this action under 42 U.S.C. § 1983. Because he is a federal inmate, however, the proper jurisdictional basis for this action is *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396–97 (1971) (providing a cause of action for monetary damages against federal officials in their individual capacities for a violation of a federal constitutional right).

Chief United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). On November 17, 2022, this Court adopted a Report and Recommendation and dismissed this action as against Defendant Lisa Farris. (ECF No. 77). This Report and Recommendation is limited to consideration of the Motion for Summary Judgment filed on behalf of Defendants Grady County Criminal Justice Authority (GCCJA) and Jimmy

Duncan, (ECF No. 74), to which Plaintiff has not responded. For the following reasons, it is recommended that the motion be **GRANTED**.

I. **BACKGROUND**

The material background facts are based on Plaintiff's Complaint, (ECF No. 1), the Motion for Summary Judgment, and various documents attached to the court-ordered Special Report (ECF No. 31). As Plaintiff has not responded to the Motion for Summary Judgment, these facts are not in dispute.

On August 23, 2018, Plaintiff was attacked by two other federal inmates while they, along with other federal inmates, were being transported by bus from the Grady County Law Enforcement Center, a detention facility administered by Defendant GCCJA, to Will Rogers World Airport in Oklahoma City, Oklahoma, where they were to be transferred to the custody of the United States Marshals Service (USMS). Defendants Jimmy Duncan and Lisa Farris were the transportation officers on the bus, and both have submitted verified Declarations describing the precautions taken to protect all inmates and the scuffle that, nevertheless, occurred on the bus. *See Declaration of Jimmy Duncan* (ECF No. 31-17) and *Declaration of Lisa Farris* (ECF No. 31-18).

Because of the scuffle that resulted in Plaintiff's glasses being broken, neither Plaintiff nor his attackers were accepted into the custody of the USMS. Instead, the three, and one other inmate who was involved in the fray were returned to the Grady County Law Enforcement Center. *See* (ECF No. 31-17). Plaintiff was not taken into custody by the USMS until September 14, 2018. (ECF No. 31-13).

According to Plaintiff, GCCJA had promulgated a policy of identifying and segregating those inmates accused or convicted of sex crimes because those inmates—especially ones whose crimes involve children—are known to be particularly vulnerable to attacks from other inmates. Plaintiff states he was so identified and separated from other inmates while he was incarcerated in the Grady County Law Enforcement Center. (ECF No. 1). Plaintiff acknowledged in his deposition that the purpose behind the policy was to keep him and other such inmates safe from attacks by other inmates. (ECF No. 74-1 at 6).

To that end, Defendant Duncan took the precautions provided by GCCJA policy to keep Plaintiff segregated from other inmates until time to board the inmates onto the bus. Defendant Duncan described the bus as having two separation cages, one in the back of the bus that could hold up to 36 inmates, and one in the front of the bus that could hold up to 8 inmates. (ECF No. 31-17 at 2). Defendant Duncan described the boarding process:

> Generally, detention staff staged all male, federal inmates in one staging area, often a dormitory-style pod or the book-in area. Those inmates which were and/or who faced safety or security risks to GCLEC staff and/or other inmates, such as certain violent offenders, gang members or sex offenders, were escorted to different staging areas which were, typically, holding cells and/or interview rooms on the first floor of GCLEC.
>
> On August 23, 2018, after detention staff had staged the federal inmates scheduled for departing transport and starting at approximately one-half hour to one hour before the scheduled departure from GCLEC, TPO Farris and I began escorting the departing federal inmates from their staging areas to the sally port, likely starting with the largest staged group of male, federal inmates followed by the male, federal inmates staged separately from the larger staged group.

> The morning of August 23, 2018, I escorted Mr. Perkins to the sally port from the holding cell where detention staff had staged him to await transport, which was an area separate from where the majority of the male, federal inmates scheduled for transport were staged.
>
> After all the male, federal inmates scheduled for transport to JPATS were assembled in the staging area, TPO Farris and I loaded them onto the bus and into the back separation cage, in alphabetical order, and then locked and secured said cage.
>
> After the males were loaded onto the transport bus, TPO Farris retrieved the female inmates scheduled for transport and escorted them from their staging area(s) to the sally port, where we subsequently loaded them onto the bus and into the front separation cage, in alphabetical order, and then secured and locked that cage.

(ECF 31-17 at 3-4). It is undisputed that Defendants Duncan and Ferris were prohibited from opening the cages during transport, absent an emergency. (ECF No. 31-17 at 4); ECF No. 31-18 at 4).

Despite the precautions taken by prison officials and the transportation officers, Ms. Farris observed inmates Mena and Owen standing up, and she noticed Plaintiff's glasses were not visible. She ordered all involved to stop what they were doing and to sit down. The inmates obeyed the order, and there were no further incidents during the transport. (ECF No. 31-18 at 4-5). Defendant Duncan was driving the bus. He describes having observed Mr. Mena, an inmate with a partially amputated arm, swing the remainder of his arm hitting Plaintiff. (ECF No. 31-17:5).

Upon arrival at the airport, Defendant Duncan determined another inmate, Mr. Peavler, was also involved in the altercation. The four inmates involved were interviewed. Mr. Mena and Mr. Owen were put in the cage at the back of the bus, while Plaintiff and

4

Mr. Peavler were put in the front separation cage. All were returned to the Grady County Law Enforcement Center. (ECF No. 31-17 at 5-6).

## II. ISSUES RAISED

Plaintiff's claim against GCCJA is based on its creation of the policy of segregating certain prisoners convicted of sex offences from the other prisoners based on their vulnerability to attack by other inmates. According to Plaintiff, the GCCJA policy is responsible for identifying him as a sex offender to other inmates, resulting in the scuffle on the bus. As for his claim against Defendant Duncan, Plaintiff contends Defendant Duncan should have segregated him in the front separation cage of the bus during the trip to the Oklahoma City Airport, just as he was segregated there on the trip back to Grady County Law Enforcement Center. He further states that Defendant Duncan did nothing to stop the assault. (ECF No. 1 at 4).

## III. STANDARD OF REVIEW

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials; or"

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

5

Fed. R. Civ. P. 56(c)(1)(A)-(B). The cited evidence should be viewed "in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture, or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## IV. ANALYSIS

### A. Claim Against GCCJA

A municipality or governmental subdivision such as GCCJA may be held liable for civil rights violations only for its own unconstitutional or illegal policies. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is not enough for a plaintiff to merely identify conduct properly attributable to the municipality. Rather, a plaintiff must establish that, "through its *deliberate* conduct, the municipality was the 'moving force'

behind an injury alleged." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (alteration in original). That is, a plaintiff must show that the municipality's policy or practice was "taken with the requisite degree of culpability and must demonstrate a direct causal link between the entity's action and deprivation of federal rights." *Id.*

The Supreme Court observed in *Brown* that when an official municipal policy "*itself* violates federal law," issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question. *See id.* at 404-405. The Court distinguished the above situation from a case where, as here, the policy at issue is lawful on its face and the entity in question, therefore, has not directly inflicted the injury through its own actions. The Court concluded that determining culpability and causation in the latter circumstance "presents much more difficult problems of proof." *Id*. In these situations, in keeping with the dictates of *Monell*, the Court believed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

> Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Id.*

In this case, Plaintiff contends the very policy undisputedly created to keep him and others convicted of sex offences safe from other inmates is responsible for his having

7

been identified as a sex offender and attacked for that reason. But Plaintiff has offered no proof that his attackers knew he was a sex offender. In fact, Plaintiff has offered no proof that his attackers were motivated by that knowledge even if they did know the basis of his conviction. Thus, Plaintiff has provided no causal link between the GCCJA's policy and the attack. What is more, even if Plaintiff's attackers were able to surmise the nature of his conviction based on his segregated status, Plaintiff has not demonstrated GCCJA's policy was formulated with the requisite culpability. Even Plaintiff acknowledges that the policy in question was promulgated to protect inmates like him.

Because Plaintiff has not presented evidence necessary to hold GCCJA liable based on its policy, GCCJA is entitled to summary judgment on the claims Plaintiff asserts against it.

### B. Claim Against Defendant Duncan

"Prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted, alteration in original). The deliberate indifference of a prison official "to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

To prevail on an Eighth Amendment claim based on a prison guard's failure to protect an inmate from harm caused by fellow inmates, it is necessary for a plaintiff to establish facts showing he was incarcerated under conditions posing a substantial risk of serious harm, the objective component of the claim, and that the prison official was deliberately indifferent to plaintiff's safety, the subjective component of the claim.

*Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The Supreme Court has defined the deliberate indifference standard as equating to "'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)). Deliberate indifference requires more than a showing of simple, or even heightened, negligence. *Id.* The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998).

      In this case, Plaintiff has produced no evidence supporting either prong of the test for an Eighth Amendment claim. It is undisputed that Plaintiff was separated from other inmates until all the male inmates were loaded onto the bus and secured in the cage at the back of the bus—Plaintiff among them. But all able-bodied inmates were restrained with handcuffs, waist chains, and leg shackles during the transport. (ECF No. 31-17 at 4). All were watched by the transport officers. Thus, Plaintiff was not placed in a situation posing substantial threat of serious harm. Although inmate Mena was able to use his upper arm to hit Plaintiff, Mena was only able to do so because he did not have a lower arm to cuff. (ECF No. 31-7 at 5). Moreover, the scuffle came to an end when the inmates obeyed Defendant Farris's order to take their seats. Plaintiff suffered no serious physical harm, and the scuffle did not qualify as an emergency that would have justified opening the cage.

That Defendant Duncan knew generally that Plaintiff had been segregated at GCCJA is not sufficient to prove Defendant Duncan knew Plaintiff was in danger from these specific inmates. Plaintiff had not reported any prior trouble with any inmate. Thus, Plaintiff has not established facts to support the subjective prong of the test for deliberate indifference to substantial risk of serious harm.

According to Plaintiff, the transport officers should have segregated him by securing him in the front cage, as they did after the scuffle on the trip back to GCLEC. (ECF No. 1 at 3). But it is undisputed that, during the inbound trip to the airport, female prisoners were in the front cage, making that option unavailable. (ECF No. 31-17 at 4); (ECF No. 31-18 at 3-4).

Plaintiff attempts to demonstrate Defendant Duncan's deliberate indifference by stating Defendant Duncan "did not attempt to stop the assault." (ECF No. 1 at 4). It is undisputed, however, that Defendant Duncan was driving the bus, and the scuffle ended without either transportation officer having to physically intervene.

For these reasons, Defendant Duncan should be granted summary judgment on Plaintiff's claims.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion for Summary Judgment filed on behalf of Defendants Jimmy Duncan and the GCCJA **(ECF No. 74)** be **GRANTED**. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of Court by **December 27, 2022** in accordance with 28

U.S.C. § 636 and Fed. R. Civ. P. 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation will waive his right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation terminates the referral to the undersigned magistrate judge in the captioned matter.

ENTERED on December 9, 2022.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE